UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

| | |
|---|---|
| EUGENE SCALIA, Secretary of Labor, <br> United States Department of Labor, <br> <br>             Plaintiff, <br>       v. <br> <br> DIOR'S PIZZERIA AND RESTAURANT INC. D/B/A <br> PATSY'S PIZZERIA, KUSHTRIM DEMAJ, <br> Individually and as Owner, and VALON TAFA, <br> Individually and as Owner, <br> <br>             Defendants. | : <br> **COMPLAINT** <br> : <br> : Civil Action No. 20-cv-1656 <br> : <br> : <br> : <br> : <br> : |

-----------------------------------------------------------------

1.  Plaintiff, EUGENE SCALIA, Secretary of Labor, United States Department of Labor (the "Secretary"), by and through undersigned counsel, brings this action under Section 16(c) and Section 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, et seq.) ("the Act" or "the FLSA"), alleging that Defendants violated Sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Act, to recover back wages, liquidated damages; to enjoin acts and practices which violate the provisions of the FLSA; and to obtain other appropriate relief.

2.  From December 2017 through at least August 2019 (the "relevant time period"), Defendants' employees regularly worked upwards of sixty hours per week in Defendants' restaurant. However, in flagrant violation of the Act, Defendants deprived their employees of their rightfully owed wages by not paying any overtime premiums. Egregiously, Defendants tried to hide this violation of the Act by creating false payroll records and paying their employees either in straight time in cash for all hours worked over 40 in a week or with a day rate or salary that did not include an overtime premium. Defendants also failed to pay at least one employee for any

1

hours at all. In furtherance of their violations of the Act, Defendants failed to keep complete and accurate records of employees' hours and pay.

## JURISDICTION AND VENUE

3. Jurisdiction over this action is properly conferred upon this Court by Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

4. Venue is proper in the United States District Court for the Eastern District of New York because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

### THE PARTIES

*Plaintiff*

5. Plaintiff, EUGENE SCALIA, Secretary of Labor, United States Department of Labor, is vested with authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages and is the proper plaintiff for this action.

*The Corporate Defendant*

6. Defendant DIOR'S PIZZERIA AND RESTAURANT INC. D/B/A PATSY'S PIZZERIA, ("DIOR'S PIZZERIA" or the "corporate defendant") is a corporation organized under the laws of the State of New York, having its principal place of business at 630 Old Country Road, Garden City, NY 11530, within the jurisdiction of this court, where it is engaged in the business of operating a restaurant.

7. Defendant DIOR'S PIZZERIA has regulated the employment of all persons employed by it, acted directly and indirectly in the company's interest in relation to the employees,

and thus is an employer of the employees within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

*The Individual Defendants*

8. Defendant KUSHTRIM DEMAJ is a co-owner of defendant DIOR'S PIZZERIA.

9. Defendant KUSHTRIM DEMAJ resides in Scarsdale, New York.

10. Defendant KUSHTRIM DEMAJ is in active control and management of the corporate defendant.

11. During the relevant time period, Defendant KUSHTRIM DEMAJ personally participated in the day-to-day operations of Dior's Pizzeria.

12. During the relevant time period, Defendant KUSHTRIM DEMAJ had authority, and exercised his authority, to determine compensation for employees of Dior's Pizzeria.

13. Upon information and belief, Defendant KUSHTRIM DEMAJ decided to compensate employees of Dior's Pizzeria at an hourly rate, day rate, or salary rate that did not include a premium for hours worked over 40 in a week, in violation of Section 7 of the Act, 29 U.S.C. § 207.

14. Upon information and belief, Defendant KUSHTRIM DEMAJ decided to compensate employees of Dior's Pizzeria with cash for hours worked over 30 in a week, so as to conceal his scheme to violate the Act.

15. Upon information and belief, Defendant KUSHTRIM DEMAJ directed that false records be created showing that no employee worked over 30 hours per week.

16. Defendant KUSHTRIM DEMAJ provided these false records to the United States Department of Labor, Wage and Hour Division ("Wage and Hour Division").

17. Defendant KUSHTRIM DEMAJ instructed employees to lie to the Wage and Hour Division and say that they worked fewer than 40 hours each week.

18. On or around February 7, 2019, after learning that the Wage and Hour Division investigators had visited the restaurant at 630 Old Country Road, Garden City, NY 11530 (the "restaurant") earlier that same day, Defendant KUSHTRIM DEMAJ went to the restaurant, brandished a fake law enforcement badge, and asked employees there what they had told the investigators.

19. On or around July 31, 2019, Defendant KUSHTRIM DEMAJ, while at the restaurant, took out a fake law enforcement badge and patted down an employee to see if he had his cell phone and was recording their conversation.

20. During the relevant time period, Defendant KUSHTRIM DEMAJ had authority to set the hours of, and did set the hours of, employees of Dior's Pizzeria.

21. During the relevant time period, Defendant KUSHTRIM DEMAJ told Dior's Pizzeria's employees what their rates of pay and work hours would be.

22. During the relevant time period, Defendant KUSHTRIM DEMAJ had authority to hire, and did hire, employees of Dior's Pizzeria.

23. During the relevant time period, Defendant KUSHTRIM DEMAJ had authority to fire, and did fire, employees of Dior's Pizzeria.

24. During the relevant time period, Defendant KUSHTRIM DEMAJ had authority to supervise, and did supervise, employees of Dior's Pizzeria.

25. During the relevant time period, Defendant KUSHTRIM DEMAJ regularly visited Dior's Pizzeria's principal place of business and monitored the work of employees of Dior's Pizzeria.

26. During the relevant time period, employees contacted KUSHTRIM DEMAJ to tell him how many hours they worked each week, and he approved those hours for payment.

27. Defendant KUSHTRIM DEMAJ has regulated the employment of all persons he has employed and has acted directly and indirectly in the interest of the corporate defendant in relation to employees during the relevant time period. Defendant KUSHTRIM DEMAJ is thus an employer of the employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

28. Defendant VALON TAFA is a co-owner of defendant DIOR'S PIZZERIA.

29. Defendant VALON TAFA resides in Brooklyn, New York.

30. Defendant VALON TAFA is in active control and management of the corporate defendant.

31. During the relevant time period, Defendant VALON TAFA personally participated in the day-to-day operations of Dior's Pizzeria.

32. Upon information and belief, during the relevant time period, Defendant VALON TAFA had authority, and exercised his authority, to determine compensation for employees of Dior's Pizzeria.

33. Upon information and belief, Defendant VALON TAFA decided to compensate employees of Dior's Pizzeria at an hourly rate, day rate, or salary rate that did not include a premium for hours worked over 40 in a week, in violation of Section 7 of the Act, 29 U.S.C. § 207.

34. Upon information and belief, Defendant VALON TAFA decided to compensate employees of Dior's Pizzeria with cash for hours worked over 30 in a week, so as to conceal his scheme to violate the Act.

35. Upon information and belief, Defendant VALON TAFA directed that false records be created showing that no employee worked over 30 hours per week.

36. After learning of the Wage and Hour Division investigators' visit to the restaurant on February 7, 2019, Defendant VALON TAFA went to the restaurant on a later date, brandished a fake law enforcement badge, and told employees that he was a law enforcement agent.

37. During the relevant time period, Defendant VALON TAFA had authority to set the hours of, and did set the hours of, employees of Dior's Pizzeria.

38. During the relevant time period, Defendant VALON TAFA told Dior's Pizzeria's employees what their rates of pay and work hours would be.

39. Upon information and belief, during the relevant time period, Defendant VALON TAFA had authority to hire, and did hire, employees of Dior's Pizzeria.

40. Upon information and belief, during the relevant time period, Defendant VALON TAFA had authority to fire, and did fire, employees of Dior's Pizzeria.

41. During the relevant time period, Defendant VALON TAFA had authority to supervise, and did supervise, employees of Dior's Pizzeria.

42. During the relevant time period, Defendant VALON TAFA regularly visited Dior's Pizzeria's principal place of business and monitored the work of employees of Dior's Pizzeria.

43. Defendant VALON TAFA has regulated the employment of all persons he has employed and has acted directly and indirectly in the interest of the corporate defendant in relation to employees during the relevant time period. Defendant VALON TAFA is thus an employer of the employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

## DEFENDANTS ARE AN ENTERPRISE
## ENGAGED IN COMMERCE WITHIN THE MEANING OF THE ACT

44. Dior's Pizzeria is an enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r).

45. Dior's Pizzeria's business activities, as described herein, are related and performed through common control for a common business purpose and constitute an enterprise within the meaning of Section 3(r) of the Act.

46. As described herein, Dior's Pizzeria engaged in the business of operating a restaurant.

47. Upon information and belief, Dior's Pizzeria had an annual gross volume of sales made or business done in an amount not less than $500,000 for the period covered by this complaint.

48. The employees listed in Exhibit A participated in the handling or otherwise working on goods or materials that have been moved in or produced for commerce. These goods include but are not limited to kitchen equipment, canned foods, drink lids, and sodas.

49. Therefore, Defendants' employees have been employed in an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(A) of the Act, 29 U.S.C. § 203(s)(1)(A).

## DEFENDANTS' EMPLOYEES WERE INDIVIDUALS
## ENGAGED IN COMMERCE WITHIN THE MEANING OF THE ACT

50. Many of the employees listed in Exhibit A performed cashier work as a substantial part of their work for Dior's Pizzeria.

51. Part of this work included regularly processing customers' credit card payments using Dior's Pizzeria's Point of Sale machines.

52. The company that processes payments made on the Point of Sale machines is Zero Fee Solutions, an independent sales organization based in Michigan that processes payments and settles those payments through Wells Fargo Bank, an American multinational financial services company headquartered in San Francisco, California, with central offices throughout the United States.

53. Therefore, the employees who performed cashier work were engaged in commerce within the meaning of Section 3(b) of the Act, 29 U.S.C. § 203(b).

### DEFENDANTS' PROHIBITED PAY PRACTICES

*Defendants Failed to Pay Premium Pay for Overtime Hours Worked*

54. At all relevant times, Defendants employed employees who, among other tasks, prepared pizzas and performed cashier work.

55. At all relevant times, Defendants' employees regularly worked approximately 45 to 60 hours per week.

56. At all relevant times through approximately August 2018, Defendants paid some employees day rates regardless of the number of hours worked each day and each week.

57. For example, one employee regularly worked around 60 hours per week and was paid a day rate of $120 per day for total weekly earnings of $600.

58. At all relevant times through approximately August 2018, as a result of paying a day rate for all hours worked during a single workweek, Defendants did not pay these employees one and one-half times their regular rate of pay when they worked in excess of 40 hours per week.

59. At all relevant times, Defendants paid other employees straight time for all hours worked, with no overtime premium.

60. These employees were paid either entirely in cash or by check for their first 30 hours and in cash for hours worked over 30 each week.

61. For example, two employees regularly worked over 50 hours per week between the beginning of July and the end of August 2018 and were paid $10 per hour for all hours worked, with no overtime premium for hours worked over 40.

62. At all relevant times, as a result of paying these employees straight time for all hours worked during a single workweek, Defendants did not pay these employees one and one-half times their regular rate of pay when they worked in excess of 40 hours per week.

63. Beginning in February 2019, Defendants began to pay two employees on a salary basis rather than with an hourly rate.

64. These two employees regularly worked over 50 hours per week.

65. Defendants paid these two employees fixed weekly salaries of $810 and $850 per week, respectively.

66. These fixed weekly salaries did not change regardless of the number of overtime hours these employees worked each week.

67. Defendants did not pay these two employees an overtime premium of one and one-half times their regular rate of pay for hours worked in excess of 40 hours per week.

68. Defendants engaged in the practices described in the preceding paragraphs 54 through 67 from December 2017 through at least August 2019.

*Defendants Failed to Pay Minimum Wage for Some Hours Worked*

69. Defendants failed to pay at least one employee for any hours worked, resulting in minimum wage violations for that employee.

70. That employee worked nineteen and a half hours during the workweek ending December 23, 2018, and Defendants failed to pay him for any of those hours.

### DEFENDANTS FAILED TO MAKE AND MAINTAIN ACCURATE RECORDS

71. At all relevant times through approximately August 2019, Defendants have failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment which they maintained as prescribed by the Regulations issued and found at 29 C.F.R. Part 516.

72. At all relevant times through approximately August 2019, Defendants failed to make or maintain any contemporaneous records of hours worked by any of their employees.

73. Instead, Defendants created false records that purported to show that no employee worked over 30 hours per week at any point in 2018.

74. Additionally, on February 7, 2019, during a visit to the restaurant by Wage and Hour Division investigators as part of an investigation into Defendants' pay practices pursuant to Section 11(a) of the Act, Defendants instructed employees to lie to the investigators and say they worked only 30 hours per week.

75. In fact, Defendants' employees regularly worked over 40 hours per week in 2018 and at all other relevant times.

76. At all relevant times through approximately August 2019, Defendants failed to make or maintain adequate and accurate records of the regular hourly rates of pay of any employee.

77. At all relevant times through approximately August 2019, Defendants failed to make or maintain adequate and accurate records showing total straight-time earnings for non-overtime hours worked.

78. At all relevant times through approximately August 2019, Defendants failed to make or maintain any record showing total premium pay for overtime hours worked for any employee.

79. At all relevant times through approximately August 2019, Defendants failed to make or maintain any record showing total wages paid for any employee.

80. Defendants engaged in the practices described in the preceding paragraphs 71 through 79 from December 2018 through at least August 2019.

**FIRST CAUSE OF ACTION**
**Violation of Sections 7(a) and 15(a)(2) of the FLSA**
**Failure to Pay Overtime**

81. The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 80 of the complaint.

82. Defendants have violated the provisions of sections 7 and 15(a)(2) of the Act by employing their employees in an enterprise engaged in commerce or in the production of goods for commerce, for workweeks longer than forty hours without compensating the employees for their employment in excess of forty hours at rates not less than one and one-half times the regular rates at which they were employed, as required by Section 7 of the Act.

83. As set forth in paragraphs 1 through 80 above, at all times relevant to this Complaint, Defendants' employees regularly worked in excess of forty hours during any given workweek.

84. As set forth in paragraphs 1 through 80 above, at all times relevant to this Complaint, Defendants failed to pay their employees any overtime premium.

85. Therefore, Defendants are liable for unpaid overtime compensation and an equal amount in liquidated damages under section 16(c) of the Act or, in the event liquidated damages

are not awarded, unpaid overtime compensation and prejudgment interest on said unpaid overtime compensation under section 17 of the Act.

### SECOND CAUSE OF ACTION
### Violation of Sections 6(a) and 15(a)(2) of the FLSA
### Failure to Pay Minimum Wage

86. The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 80 of the complaint.

87. As a result of Defendants' failure to pay at least one employee for any hours worked, Defendants have violated the provisions of Sections 6 and 15(a)(2) of the Act. Through their unlawful practices, Defendants paid employees in an enterprise engaged in commerce or in the production of goods for commerce at a rate less than the applicable statutory minimum wage prescribed in Section 6 of the Act.

88. Therefore, Defendants are liable for any unpaid minimum wages and an equal amount in liquidated damages under Section 16(c) of the Act or, in the event liquidated damages are not awarded, unpaid minimum wages and prejudgment interest under Section 17 of the Act.

### THIRD CAUSE OF ACTION
### Violation of Sections 11(c) and 15(a)(5) of the FLSA
### Failure to Make, Keep, and Preserve Adequate and Accurate Records

89. The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 80 of the complaint.

90. Defendants have violated the provisions of sections 11(c) and 15(a)(5) of the Act, in that Defendants failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment which they maintained as prescribed by the Regulations issued and found at 29 C.F.R. Part 516.  More specifically, as set

forth in paragraphs 1 through 80 above, Defendants failed to make and maintain adequate and accurate records of all employees' regular hourly rate of pay, total straight-time earnings for non-overtime hours worked, total premium pay for overtime hours worked, total deductions from wages, and total wages paid.

**WHEREFORE**, cause having been shown, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

1.  An injunction issued pursuant to Section 17 of the Act permanently restraining Defendants, their officers, agents, servants, employees, and those persons in active concern or participation with Defendants, from violating the provisions of Sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Act;

2.  An order pursuant to Section 16(c) of the Act finding Defendants liable for unpaid overtime and minimum wage compensation found due Defendants' employees listed on the attached Exhibit A and an equal amount of liquidated damages (additional back wage compensation and liquidated damages may be owed to certain employees presently unknown to Plaintiff for the period covered by this complaint); or

3.  In the event liquidated damages are not awarded, for an injunction issued pursuant to Section 17 of the Act restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from withholding the amount of unpaid overtime and minimum wage compensation found due Defendants' employees and prejudgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

4. An order compelling Defendants to reimburse the Secretary for the costs of this action; and

5. An order granting such other relief as the Court may deem necessary or appropriate.

DATED:   April 1, 2020
         New York, New York

                                        KATE S. O'SCANNLAIN
                                        Solicitor of Labor

                                        JEFFREY S. ROGOFF
                                        Regional Solicitor

                                        s/ James R. Wong
                                        JAMES R. WONG
                                        Senior Trial Attorney

                                        U.S. Department of Labor,
                                        *Attorneys for Plaintiff Secretary of Labor*

                                        U.S. Department of Labor
                                        Office of the Regional Solicitor
                                        201 Varick Street, Room 983
                                        New York, NY 10014
                                        (646) 264-3646
                                        (646) 264-3660 (fax)
                                        wong.james.r@dol.gov
                                        NY-SOL-ECF@dol.gov
                                        Secretary of Labor, Plaintiff

## EXHIBIT A

Alexis Herrera
Yamillete Lopez
Jennifer Mendez
Carlos Mendoza
Cesar Gabriel Osorio
Elias Rivera
Handerson Romero
Oscar Jose Romero